Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Attorneys for Plaintiff
Directory Assistants, Inc.
C. Bradley Vynalek (#020051)
brad.vynalek@quarles.com
Krystal M. Aspey (#026609)
krystal.aspey@quarles.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DIRECTORY ASSISTANTS, INC., | NO. |
| Plaintiff, | [Pending in the United States District Court of the District of Connecticut, Case No. 3:11cv00801-MRK] |
| vs. | |
| DOES 1-10, | **PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENA TO XCENTRIC VENTURES, LLC** |
| Defendants. | |

Plaintiff Directory Assistants, Inc. ("Directory Assistants"), pursuant to Rule 45, Fed.R.Civ.P., requests that this Court compel third party Xcentric Ventures, LLC ("Xcentric"), the company that operates RipOffReport.com, to produce documents requested in the Subpoena To Produce Documents, Information, or Objects or to Permit Inspection of Premises In A Civil Case issued on May 24, 2011.  Directory Assistants requests that RipOffReport.com ordered to produce the documents within five days from the Court's order.  Directory Assistants also requests that it be awarded its reasonable attorneys' fees and costs incurred in connection with this Motion.

This Motion is supported by the accompanying Memorandum of Facts and

1    Authorities and the exhibits thereto, including the Certificate of Counsel, which is

2    attached as Exhibit "1" and is incorporated by this reference, pursuant to Rule 37(a)(1),

3    Fed. R. Civ. P.

4         RESPECTFULLY SUBMITTED this 23rd day of August, 2011.

5              QUARLES & BRADY LLP
          Renaissance One

6              Two North Central Avenue
          Phoenix, AZ  85004-2391

7

8

9              By  */s/ Krystal M. Aspey*
             C. Bradley Vynalek

10                 Krystal M. Aspey

11              Attorneys for Plaintiff
          Directory Assistants, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

QB\14278005.2

## MEMORANDUM OF FACTS AND AUTHORITIES

Directory Assistants, Inc. ("Directory Assistants") has a lawsuit (the "John Doe Lawsuit") pending against an unknown defendant who posted false and misleading statements about Directory Assistants on the Arizona-based website RipOffReport.com.[1] On May 24, 2011, Directory Assistants served a subpoena (the "Subpoena") on Xcentric Ventures, LLC ("Xcentric"), the company that operates RipOffReport.com, seeking information to identify the anonymous poster. (Exhibit 2.) The subpoena required Xcentric to respond by June 10, 2011. Xcentric's counsel objected to the Supoena by letter dated June 13, 2011 and refused to provide the requested information. Directory Assistants now moves for an order compelling Xcentric to comply with the Subpoena.

## I.   BACKGROUND.

### A.   Directory Assistants' Business.

Directory Assistants is an advertising consulting agency that specializes in helping businesses make better choices in their directory advertising purchases. (*See* Affidavit of Michael Cody in Support of Plaintiff's Emergency Motion for Expedited Discovery ("Cody Aff.") in the John Doe Lawsuit, attached as Exhibit 3, at ¶ 3.) It has worked with thousands of satisfied customers from large and small businesses across the country. (*Id.* at ¶ 4.) Directory Assistants uses its knowledge and experience to help its clients determine whether they should retain their present directory advertising program or make cost-saving changes. (*Id.* at ¶ 5.) Directory Assistants empowers its customers to make more informed decisions and places them on a level playing field with their directory sales representatives. (*Id.* at ¶ 6.) It helps its customers understand what makes directory advertising effective, encouraging them to consider factors that they may never have considered before. (*Id.* at ¶ 7.)

---

[1] That lawsuit is pending in the United States District Court for the District of Connecticut and is captioned *Directory Assistants, Inc. v. John Doe*, Civ. No. 3:11cv00801-MRK.

QB\14278005.2

1    Directory Assistants earns its money through contingency fee arrangements with its

2    customers. (Cody Aff. at ¶ 8.)  Under these contracts, the customer agrees that it will pay

3    Directory Assistants a fixed percentage of its savings on its directory advertising for a

4    certain number of years.  (*Id.* at ¶ 9.)  Directory Assistants' customers do not pay any up-

5    front fee.  (*Id.* at ¶ 10.)  They are free to cancel with no obligation at any time prior to

6    receiving information and advice from Directory Assistants.  (*Id.* at ¶ 11.)  Directory

7    Assistants also provides a "performance guarantee" under which a customer may cancel

8    its contract with no obligation if Directory Assistants is not able to show that customer

9    how to save at least 40% on its directory advertising.  (*Id.* at ¶ 12.)  If a customer discloses

10   pre-existing plans to change its directory advertising before signing the contract, it will

11   not owe Directory Assistants any fee for the savings achieved by virtue of those pre-

12   existing plans.  (*Id.* at ¶ 13.)  And, the customer can hear Directory Assistants' cost-saving

13   advice and then decide not to make any changes to its directory advertising.  (*Id.* at ¶ 14.)

14   In that case, the customer will not owe Directory Assistants any fee.  (*Id.*)  Directory

15   Assistants provides these options to its customers because it is confident that it can

16   provide cost-saving advice that its customers will want to follow.  (*Id.* at ¶ 15.)

17       **B.**     **The Defendant's False and Misleading Posts.**

18       The unknown defendant posted false and misleading statements about Directory

19   Assistants on two websites in April 2011.  The posts included the same text:

20       **Directory Assistants Inc David Ford, Dan Cassain Do Not Sign a**
         **Contract with this Company Glastonbury, Connecticut**
21

22       Do not sign a contract with this company.  Once you sign the contract you
         are not a customer, but a victim of their contract.  They won't help you
23       lower your ad costs.  They will only tell you to reduce the size of your ad
         and when you do or make any changes at all they will charge you
         exhorbitant [sic] and outrageous fees.  Dan C. is the good cop.  He looks
24       nice and is professional.  Once they get you to sign, then you will be dealing
         with David Ford who sounds like a mafia kingpin.  He will threaten to take
25       you to court if you don't pay exhorbitant [sic] fees.  Their contract if full of
         deceptive devices that work in their favor.
26

QB\14278005.2

1    (*See* Cody Aff. ¶¶ 20-21, Exs. A & B.)  The unknown defendant posted these statements

2    on      www.ScamInformer.com      using      the      alias      "USER239330"      and      on

3    www.RipOffReport.com using the alias as "Andrew (Knoxville Tennessee United States

4    of America)." (*Id.*)  Scam Informer's and Ripoff Report's terms of use indicate that the

5    website operators do not voluntarily disclose the identity of people who post on their sites.

6    (*Id.* at ¶ 22.)

7        The unknown defendant's false, misleading, and disparaging statements have

8    caused tangible injury to Directory Assistants. (Cody Aff. at ¶ 25.)  As a result, Directory

9    Assistants has spent time and money responding to questions and concerns about the

10   veracity of the defendant's allegations from prospective customers—and there are likely

11   other customers and prospective customers who have chosen not to do business with

12   Directory Assistants based on the defendant's statements without even giving Directory

13   Assistants the opportunity to defend itself. (*Id.*)  Directory Assistants has incurred costs

14   monitoring the internet for other false and disparaging posts, and it is now incurring legal

15   fees to prosecute this lawsuit. (*Id.*)  These quantifiable damages are the direct result of the

16   defendant's false and misleading statements.

17       **C.    The John Doe Lawsuit.**

18       Directory Assistants filed a Verified Complaint in the John Doe Lawsuit on May

19   16, 2011.  A true and correct copy of the Verified Complaint is attached as Exhibit 4.  It

20   sets forth the unwarranted smear campaign that Directory Assistants has endured, quoting

21   and identifying the defendant's many false and misleading statements about Directory

22   Assistants.    The Verified Complaint alleges tortious interference claims and seeks

23   damages and permanent injunctive relief.

24       Directory Assistants filed a motion for expedited discovery in the John Doe

25   Lawsuit on May 20, 2011.  (Ex. 3.)  The Connecticut court granted that motion on May

26   23, 2011.  A true and correct copy of that order is attached as Exhibit 4.

QB\14278005.2

1    Directory Assistants issued the Subpoena on May 24, 2011.   (Ex. 2.)   The

2    Subpoena required Xcentric to comply by June 10, 2011.  (*Id.*)  The Subpoena requested

3    information necessary to identify the anonymous poster.  (*Id.*)  Xcentric objected to the

4    Subpoena by letter dated June 13, 2011 and refused to comply with the Subpoena.  A true

5    and correct copy of Xcentric's June 13, 2011 letter is attached as Exhibit 6.

6    **II.    LEGAL STANDARD.**

7         A party must satisfy five requirements to compel compliance with a subpoena in

8    connection with anonymous internet postings.    Those five requirements are: "(1) a

9    concrete showing of a *prima facie* claim of actionable harm; (2) the specificity of the

10   discovery request; (3) the absence of alternative means to obtain the subpoenaed

11   information; (4) a central need for the subpoenaed information to advance the claim; and

12   (5) the Doe defendants' expectation of privacy."  *Best Western Intern., Inc. v. Doe*, 2006

13   WL 2091695, *4 (D. Ariz. 2006).   Here, for the reasons contained herein, Directory

14   Assistants has satisfied each factor.

15   **III.    ARGUMENT.**

16        The First Amendment right to anonymous Internet speech is not absolute.

17   *Ecommerce Innovations LLC v. Does 1-10*, 2008 U.S Dist. Lexis 99325, *3 (D. Ariz. Nov.

18   25, 2008).   The First Amendment does not give a person the right to engage in libel or

19   misleading or commercial speech. *See Mobilisa, Inc. v. John Doe 1*, 170 P.3d 712, 717

20   (Ariz. Ct. App. 2007) (collecting cases).  To obtain the identity of an anonymous poster, a

21   party must show that its cause of action against the anonymous poster could survive a

22   motion for summary judgment on elements not dependent on the speaker's identity.

23   *Ecommerce Innovations, LLC*, 2008 U.S Dist. Lexis 99325 at *3.[2]  Placing this burden on

24   ───────────────

[2] Directory Assistants addressed a more comprehensive standard in its Emergency Motion

25   for Expedited Discovery.  (Ex. 3.)  The District of Connecticut has adopted a 6-part test to
     determine whether to unmask an anonymous defendant. *See Doe I v. Individuals Whose*

26   *True Names Are Unknown*, 561 F. Supp. 2d 249, 254-55 (D. Conn. 2008) (Droney, J.).

1 the requesting party "furthers the goal of compelling identification of anonymous internet

2 speakers only as a means to redress legitimate misuses of speech rather than as a means to

3 retaliate against or chill legitimate uses of speech." *Id.* at *3-4.

4 Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment

5 "shall be rendered forthwith if the pleadings, depositions, the discovery and disclosure

6 materials on file, and any affidavits show that there is no genuine issue as to any material

7 fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

8 P. 56(c). A party moving for summary judgment has the initial burden of showing that no

9 genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

10 *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). The burden then shifts to

11 the non-moving party to come forward with material facts sufficient to create a triable

12 issue of fact. *See id.* at 247-48. There is no genuine issue precluding summary judgment

13 unless there is "material evidence sufficient to generate a genuine dispute of fact for trial."

14 *Anderson*, 477 U.S. at 248; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

15 The party opposing summary judgment "may not rest upon the mere allegations or

16 denials of [the party's] pleading, but . . . must set forth specific facts showing that there is

17 a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law at issue determines

18 which facts are "material," and only disputes over factual issues which might affect the

19 outcome of the action under the applicable law can create a genuine dispute sufficient to

20 preclude entry of summary judgment. *See Anderson*, 477 U.S. at 248.

21 Directory Assistants alleged two tort claims against the defendant in the John Doe

22 Lawsuit – tortious interference with contractual relations and tortious interference with

23 business expectancies. "A claim for tortious interference with contractual relations

24 To the extent that this Court applies this standard or considers any of those factors in
25 deciding this motion to compel, Directory Assistants relies on the facts and arguments set
forth in its Emergency Motion for Expedited Discovery (Ex. 3, hereto) as support for this
26 motion to compel.

QB\14278005.2

1    requires the plaintiff to establish (1) the existence of a contractual or beneficial

2    relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent

3    to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered

4    by the plaintiff that was caused by the defendants' tortious conduct." *Appleton v. Bd. of*

5    *Educ.*, 254 Conn. 205, 213 (2000).  The elements of a claim for tortious interference with

6    business expectancies are: "(1) a business relationship between the plaintiff and another

7    party; (2) the defendant's intentional interference with the business relationship while

8    knowing of the business relationship; and (3) as a result of the interference, the plaintiff

9    suffers actual loss." *Hi-Ho Tower v. Com-Tronics, Inc.*, 255 Conn. 20, 27 (2000).  The

10   attached Verified Complaint and affidavit shows that Directory Assistants could survive a

11   motion for summary judgment on these claims.

12          Directory Assistants is an active business that has existing contractual relationships

13   with its customers and regularly solicits new customers for its business. (Cody Aff. ¶¶ 3-

14   15.)  The anonymous defendant's postings show his or her knowledge of and intent to

15   interfere with Directory Assistants' business relationships and business expectancies.[3]

16   The title of the post warns: "Do Not Sign a Contract with this Company[.]" (Cody Aff.

17   Exs. A, B.)  The post begins with the same warning and then tells potential customers that

18   after they sign a contract they "are not a customer, but a victim of their contract." (*Id.*)

19   These statements show that the defendant knew that Directory Assistants had existing and

20   potential contractual or beneficial business relationships.  Even if the defendant denied

21   such knowledge or intent, the language of the posts creates an issue of fact that would

22   survive summary judgment. *Anderson*, 477 U.S. at 248.

23          The defendant's statements are tortious because they are false, misleading, and

24   _____

[3] The content of the posts implies that the defendant is aware that Directory Assistants has

25   actual and prospective contractual and business relationships.  To the extent that proving
     actual knowledge is necessary to prevail on summary judgment of these claims, such

26   proof requires the defendant's identity and subsequent factual investigation.

1   defamatory.  *See QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 359-360 (Conn.

2   2001) ("Defamation or disparagement of a business' goods and services may be

3   considered trade libel and is recognized by Connecticut and New York courts as a species

4   of defamation."); *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217, 837 A.2d 759

5   (2004) ("A defamatory statement is defined as a communication that tends to harm the

6   reputation of another as to lower him in the estimation of the community or to deter third

7   persons from associating or dealing with him....").  The defendant stated that Directory

8   Assistants "will not help you lower your ad costs" and that they "will only tell you to

9   reduce the size of your ad and when you do or make any changes at all they will charge

10  you exhorbitant [sic] and outrageous fees."  These statements concern the heart of the

11  Directory Assistants' services – helping customers make informed yellow page advertising

12  decisions and reducing their customers' advertising costs – and show the defendant's intent

13  to deter others from dealing with Directory Assistants.

14          Contrary to the defendant's assertion, Directory Assistants has helped thousands of

15  customers reduce their ad costs.  (*See* Affidavit of Michael Cody in Support of Motion to

16  Compel ("2nd Cody Aff."), attached hereto as Ex. 7, ¶ 6.)  It also does much more than

17  simply tell customers to reduce the size of their ads.  Directory Assistants educates its

18  customers about yellow page advertising strategy, costs, and what kind of ads will provide

19  the best return for the customer's advertising dollars based on the particular business the

20  customer operates.  (*Id.* at ¶ 5)  Directory Assistants routinely teaches its customers about

21  which directories to advertise in, sizes of ads, strategies, the existence and use of free

22  listings, ad design, use of color ads, market plans, how yellow page publisher discounts

23  work, how yellow page publishers charge for advertising, and whether it makes sense for

24  that particular customer to advertise in the yellow pages at all.  (*Id.*)  Directory Assistants

25  also assists its customers with placing ads with yellow page publishers, designing ads, and

26  checking the ads for accuracy after they are published.  (*Id.*)  Directory Assistants'

1    contract lists these services, which are included as part of the fee that the customer pays.

2    (*Id.* at ¶ 8.)

3        The defendant's statement that Directory Assistants' fees are outrageous and

4    exorbitant creates a false impression that the customers do not know what Directory

5    Assistants' fees will be.  Directory Assistants' contract discloses the fees and gives the

6    customer three fee options from which the customer chooses. (2nd Cody Aff. at ¶ 9.) The

7    fees are a percentage of how much the customer saves on its yellow page advertising.

8    (*Id.*)  The customer owes nothing if it does not make any cost-saving changes to its ads

9    after Directory Assistants provides its services.     (*Id.*)   The contract also includes a

10   performance guarantee that allows the customer to terminate the contract if Directory

11   Assistants does not show the customer how it can save at least 40% off its existing yellow

12   page advertising.   (*Id.*)   Contrary to the defendant's statements, Directory Assistants

13   informs its customers of how the fees are calculated and charges its customers the fees set

14   forth in their contract.

15       The defendant's post also suggests that Directory Assistants charges its customers

16   for changes that the customer made on its own.  This is false.  Directory Assistants asks

17   every potential customer what, if any, changes that they intend to make to their ads before

18   they sign a contract with Directory Assistants. (2nd Cody Aff. at ¶ 11.) The customer's

19   "pre-disposed changes" are listed in the contract so that the customer does not get billed

20   for changes that they intended to make before working with Directory Assistants. (*Id.*)

21   The contract includes express terms explaining this procedure. (*Id.*)

22       The defendant also disparaged Directory Assistants' president by likening him to a

23   "mafia kingpin" and stating that he "will threaten to take you to court if you don't pay

24   exhorbitant [sic] fees." (Cody Aff. ¶¶ 20-21, Exs. A & B.)  The post concludes by

25   declaring that Directory Assistants' "contract is full of deceptive devices that work in their

26   favor."  (*Id.*)   The defendant's posts also show that the defendant intended to prevent

-10-

1  Directory Assistants from obtaining new customers and/or interfere with Directory
2  Assistants' existing business relationships.

3  Directory Assistants has suffered actual loss as a result of the defendant's posts.
4  Directory Assistants has spent significant time and money to address the posts and
5  reassure concerned prospective customers that it is a worthy business partner. (Cody Aff.
6  ¶¶ 24-25.)  In addition, on May 10, 2011, Directory Assistants received copies of emails
7  sent from a yellow pages publisher to one of Directory Assistants' prospective customers
8  in Virginia. (*Id.* at ¶24; 2nd Cody Aff. ¶ 13.) These emails included links to, among other
9  things, the posts that the defendant made on RipOffReport.com and ScamInformer.com.
10  (*Id.*)  The emails also encourage the yellow pages publisher's sales employees to send
11  these links to any customers who discuss the possibility of hiring Directory Assistants.
12  (*Id.*)  After receiving these emails, the prospective customer in Virginia declined to do
13  business with Directory Assistants.  (*Id.*)  Another prospective customer, Ingram Auto
14  Parts in Virginia, also declined to do business with Directory Assistants after it received
15  copies of these emails with the defendant's false statements.  (2nd Cody Aff. at ¶ 14.)
16  Directory Assistants does not know at this time how many more potential customer and
17  prospective customer relationships have been affected by this conduct.  (*Id.*)

18  These facts show that the unknown defendant posted false statements about
19  Directory Assistants to interfere with Directory Assistant's existing and potential
20  customers.  Directory Assistants has suffered actual losses as a result of this conduct.
21  These facts therefore satisfy the elements of Directory Assistant's claims against the
22  unknown defendant in the John Doe Lawsuit and, at a minimum, would create factual
23  issues that would survive summary judgment.

24  **IV.   CONCLUSION.**

25  The unknown defendant posted false and defamatory statements about Directory
26  Assistants on the Internet.  The language of the posts shows that this person intended to

1  harm Directory Assistant's business.   This Court should order Xcentric Ventures to

2  comply with the Subpoena and provide the information necessary for Directory Assistants

3  to identify the unknown defendant so that it can purse redress in the John Doe Lawsuit.

4         RESPECTFULLY SUBMITTED this 23rd day of August, 2011.

5                                  QUARLES & BRADY LLP
                                   Renaissance One
6                                  Two North Central Avenue
                                   Phoenix, AZ  85004-2391
7

8
                                   By  /s/ Krystal M. Aspey
9                                      C. Bradley Vynalek
                                       Krystal M. Aspey
10
                                   Attorneys for Plaintiff
11                                 Directory Assistants, Inc.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

QB\14278005.2